(October 5, 2006)

■ The People of the State of New York, Respondent, v Sherman Black, Appellant. [821 NYS2d 593]—

Judgment, Supreme Court, Bronx County (Troy K. Webber, J.), rendered April 16, 2004, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree and reckless endangerment in the first degree, and sentencing him to concurrent terms of 7 years and $2^{1}/_{3}$ to 7 years, respectively, unanimously modified, on the law, the reckless endangerment conviction vacated and the matter remanded for a new trial on that count, and for resentencing on the weapon conviction, and otherwise affirmed.

After a dispute in defendant's apartment over a souring business relationship, Kevin Vaughn challenged defendant to a fight. Vaughn left the apartment armed with a gun and defendant followed shortly thereafter, also armed with a handgun. The dispute continued downstairs in the street, at which point Vaughn's brother Deron interceded, and began arguing with defendant. A tussle ensued that led to Deron pushing defendant onto a pile of garbage, with Deron falling on top of him. Deron then took a broken piece of glass from a discarded mirror and threatened to cut defendant's throat. Other friends prevented any further attack and Deron began walking away.

According to the prosecution's witnesses, at that point defendant then followed Deron, pulled out a gun and shot him. Kevin Vaughn testified that he and defendant then "locked eyes," after which defendant fired three shots at him. One of Kevin's friends then fired three shots at defendant, and Kevin then took the gun and fired two more times.

Defendant testified differently, stating that as Deron walked away, he began walking toward his building. He then observed Deron "launch at him," still with the glass in his raised hand. Defendant took out his gun and fired at Deron, who fell. Defendant then looked for Kevin, who he observed reaching for a gun. Kevin handed the gun to his friend Morgan, who began firing at defendant. Defendant testified that he fired three shots at Kevin and Morgan "because they started to fire at me." Defendant fled to Virginia where he was eventually arrested for Deron's murder.

Defendant was charged with two counts of murder in the second degree (intentional and depraved indifference), two counts of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, attempted murder in the second degree (Kevin Vaughn), attempted assault in the first degree (Kevin Vaughn), and reckless endangerment in the first degree (under circumstances evincing indifference to human life, defendant recklessly engaged in conduct creating a grave risk of death to another person by shooting a loaded firearm where civilians were present).

The defense at trial was justification, and counsel requested that the court charge such defense with respect to every count submitted except criminal possession of a weapon in the second degree. The court agreed that based on defendant's testimony a justification charge was appropriate, but the actual charge instructed the jury that the "defense of justification does not apply . . . to the charge of Reckless Endangerment in the First Degree." Counsel's objection to this portion of the charge was overruled.

The jury acquitted defendant of each count for which the defense of justification was charged: two counts of murder in the second degree, two counts of second-degree weapons possession, attempted murder in the second degree and attempted assault in the first degree. Defendant was convicted of reckless endangerment in the first degree and third-degree weapons possession—the only two charges that were not covered by the court's justification charge.

The trial court erred in instructing the jury that the defense of justification did not apply to the reckless endangerment charge (see People v Goetz, 68 NY2d 96, 104 n 2 [1986]; see also People v Kirby, 175 AD2d 885 [1991]). The People argue that this charging error was harmless since, on the facts of this case, defendant was not entitled to a justification charge on any of the counts, including the reckless endangerment charge. We disagree.*

If any reasonable view of the evidence would permit the fact-finder to decide that the conduct of the accused was justified, the instruction should be given (People v McManus, 67 NY2d

---

* Although this Court is without jurisdiction to review the People's argument that a justification charge was not appropriate on any of the counts in which it was submitted (see CPL 470.15 [1]; People v LaFontaine, 92 NY2d 470 [1998]), we review the propriety of the justification charge solely to demonstrate that a reasonable view of the evidence supported it with respect to the reckless endangerment charge, and thus, the failure to give it was not harmless error.

541, 549 [1986]). Thus, if the evidence reasonably supported a finding that defendant reasonably believed deadly physical force was necessary to defend against the imminent use of deadly physical force, and defendant could not safely retreat, or had no duty to retreat, then justification would be established (*Matter of Y.K.*, 87 NY2d 430 [1996]; *Goetz*, 68 NY2d at 115; *People v Arzu*, 7 AD3d 458 [2004], *lv dismissed* 3 NY3d 670 [2004]).

Viewing the evidence in a light most favorable to the defendant (*see People v Padgett*, 60 NY2d 142, 144-145 [1983]), there was sufficient evidence to entitle defendant to a justification instruction on the reckless endangerment charge. If, as the trial court initially recognized, defendant's version of the events had been credited, to wit, that Deron launched himself at defendant with a shard of glass and Morgan and Kevin shot at him first, then the jury could reasonably conclude that defendant reasonably believed deadly physical force was necessary to defend against these attacks (*Arzu*, 7 AD3d at 459).

Moreover, contrary to the People's contention, a reasonable view of the evidence existed that defendant could not have retreated safely. Although the People argue that defendant could have "retreated" by not leaving his apartment to engage in a confrontation, the cases cited in support of this contention are inapposite, since they involve defendants who, after an initial confrontation, left the scene and returned to use deadly physical force on an unarmed victim, or one who is not threatening to use imminent deadly physical force (*see e.g. People v Wimberly*, 19 AD3d 518 [2005], *lv denied* 5 NY3d 811 [2005]; *People v Ramirez*, 269 AD2d 611 [2000], *lv denied* 95 NY2d 856 [2000]).

In this case, defendant had no duty to retreat in the face of nondeadly physical force by Kevin and Deron, as such duty did not arise "until the point at which deadly physical force was used or imminent" (*Matter of Y.K.*, 87 NY2d at 434). The evidence of Deron's launching and the shots fired by Morgan and Kevin supported a reasonable belief by defendant that he could not safely retreat, making a justification charge necessary. A new trial on the reckless endangerment charge is required.

We also find that resentencing is required on the weapons possession count because the trial court erroneously relied on the counts of which defendant was acquitted in making its sentencing determination. At sentencing, the prosecutor requested the seven-year maximum sentence for criminal possession of a weapon in the third degree, arguing that "there is no way of seeing this case without acknowledgment of the tragic consequences and the tragic events of this case," i.e., the death of Deron. Noting that the prosecution's request was "based pri-

marily upon what he was acquitted of," defense counsel asked the court not to sentence defendant on the acquitted counts, but instead to "focus . . . on the conduct for which he's been convicted, the possession of a weapon."

In response, the court stated:

"[Defense Counsel], you stated in sentencing the defendant I should disregard the fact that . . . the initial charges against the defendant were for murder [as well as attempted murder and second-degree weapons possession]. I can't disregard those things.

"In sentencing the defendant I have to take all of those things into consideration. Wherein, yes, the jury did acquit the defendant of the murder in the second degree [and other charges], those are all factors that I still have to take into consideration concerning the testimony that was elicited here during trial.

"So, no, I cannot sentence the defendant as if he were simply . . . arrested on the streets in possession of a weapon. That is not what occurred.

"What occurred is he used that weapon and fired it at . . . least two other individuals, killing one individual, and you know injuring the second individual.

"He may well have been in fear of his life, and the jury determined obviously he was in fear of his life, but I must take into consideration there was at least one life that was lost on that day."

This Court has repeatedly held that a sentencing court may not base its sentence on crimes of which the defendant was acquitted (see e.g. People v Wilkonson, 281 AD2d 373, 374-375 [2001], lv denied 96 NY2d 926 [2001]; People v Varlack, 259 AD2d 392, 394 [1999], lv denied 93 NY2d 1029 [1999]; People v Maula, 163 AD2d 180 [1990]). Nevertheless, the trial court freely admitted that it could not disregard defendant's conduct underlying the murder, attempted murder, attempted assault and second-degree gun possession in sentencing him. The court underscored that what occurred here was the firing of a gun at several persons, killing one. While acknowledging the jury's finding that the shootings were justified, the court nonetheless felt compelled to take into consideration that a life was taken. Clearly, the court's comments show consideration of conduct underlying the charges of which defendant was acquitted.

The People's arguments in support of the sentencing determination are rejected. First, contrary to their argument that defendant failed to preserve the issue for appellate review, defense counsel's comments prior to sentencing were more than suf-

ficient to alert the court of defendant's position that a seven-year maximum sentence would be inappropriate if based on conduct for which defendant was acquitted. Next, the prosecution argues that the court's comments were essentially unavoidable because the acquittal charges were intimately related and intertwined with the charges of which defendant was convicted. While the charges were related, the court easily could have confined its comments to defendant's lawless behavior in firing a loaded weapon on a street where people were present, without mentioning the shooting of Deron and shooting at Kevin Vaughn.

We also reject the People's argument that the court properly considered conduct for which defendant was acquitted because his commission of those acts were proved by a preponderance of the evidence (citing *United States v Watts*, 519 US 148 [1997]; *see also People v Janick*, 186 Misc 2d 1, 6-7 [2000], *affd* 288 AD2d 885 [2001], *lv denied* 97 NY2d 755 [2002]). The *Watts* court's rationale is not appropriate to this case, where a justification defense was offered. As the jury verdict made clear, defendant's acts of shooting at people who were threatening him with deadly physical force (Deron, Kevin and Morgan) were justified under the law. Indeed, that defendant was acquitted of all charges for which the justification defense was considered by the jury and convicted of the only charge for which the jury was (erroneously) told the justification did not apply is convincing proof that the jury credited the justification defense and did not merely exercise leniency. Since the jury believed defendant's conduct was justified, it is irrelevant that he committed those "acts" by a preponderance of the evidence. Critically, no finding has been made by a preponderance of the evidence that defendant committed two *unjustified* shootings. Accordingly, because the conduct of which defendant was acquitted was improperly considered by the sentencing court, a remand for resentencing is required.

We confine our determination to the court's erroneous reliance on the conduct for which defendant was acquitted. We offer no opinion on the length of the sentence actually imposed for the reckless endangerment conviction. Concur—Buckley, P.J., Tom, Andrias, Gonzalez and Sweeny, JJ.